ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CARMEN MILAGROS CRUZ RIVERA Y OTROS<br><br>Recurridos<br><br>v.<br><br>METRO PAVIA HOSPITAL, INC. Y OTROS<br><br>Peticionarios | KLCE202301294 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.<br><br>SJ2022CV09552 (Sala 801)<br><br>Sobre:<br><br>Impericia Médica |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres y la Jueza Rivera Pérez.

Rivera Pérez, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 19 de enero de 2024.

Comparecen las partes peticionarias ER Sunrise LLC (en adelante, ER Sunrise) y Puerto Rico Medical Defense Insurance Company (en adelante, PRMD) mediante un recurso de *Petición de Certiorari Civil* y nos solicitan la revisión de la *Resolución* emitida el 17 de octubre de 2023 y notificada el 18 de octubre de 2023, por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI). Mediante este dictamen, el TPI declaró No Ha Lugar la *Moción de Desestimación* presentada por las partes peticionarias.

Por los fundamentos que expondremos, se deniega la expedición de la *Petición de Certiorari Civil* y se declara No Ha Lugar la *Solicitud de Orden en Auxilio de Jurisdicción.*

**I**

El 29 de octubre de 2022,[1] la parte recurrida la Sra. Carmen Milagros Cruz Rivera (en adelante, Sra. Cruz Rivera), el Sr. Juan

---

[1] En la *Demanda*, la parte recurrida alegó lo siguiente:
"[l]a demanda se presenta luego de haberse interrumpido oportunamente el término prescriptivo de un año, en las siguientes fechas: a) 28 de febrero de 2020 (por correo certificado con acuse

Carlos Sánchez Vargas, y la Sra. Javillys Benítez Cruz, presentaron una *Demanda* sobre daños y perjuicios por impericia médica en contra de Metro Pavía Hospital, Inc. h/n/c Metro Pavía Health System y/o Metro Pavía Clinic Cupey y/o Hospital San Francisco y/o Hospital Pavía Santurce, CNA Financial Corporation t/c/c CNA Insurance Company y/o Continenta Casualty Company, y varias partes de nombres desconocidos designadas con los nombres ficticios siguientes: Compañías de Seguros A, B y C; Fulanos y Fulanas de Tal 1-6; y Sociedades de Gananciales 7-12.[2] En síntesis, la parte recurrida solicitó en la demanda una indemnización por los daños y perjuicios sufridos a causa de la alegada falta de pericia profesional de la parte peticionara al brindarle tratamiento médico a la Sra. Cruz Rivera el 3 y 4 de marzo de 2019 en la sala de emergencias de Metro Pavía Clinic Cupey.

El 6 de diciembre de 2022, la parte recurrida presentó una *Moción Solicitando Autorización para Enmendar la Demanda y Solicitud de Expedición de Emplazamiento* acompañada por una *Demanda Enmendada.*[3] En su moción, la parte recurrida alegó que

---

de recibo), contestada por la representación legal de MPH el 6 de octubre de 2020; b) el 20 de febrero de 2021, sellada recibida en el departamento legal de la co-demandada el 24 de febrero siguiente; y c) el 14 de febrero de 2022, sellada recibida en el departamento legal de la co-demandada el 17 de febrero siguiente."

[2] Apéndice 2 de la *Petición de Certiorari Civil*, págs. 12-36. En cuanto a estas partes de nombres desconocidos, en la demanda se alegó lo siguiente:

"5. Las [...] COMPAÑÍAS DE SEGUROS A, B Y C [...] son compañías de seguro [...] las cuales, en todo momento pertinente y para la fecha en que ocurrieron los hechos, tenían vigentes pólizas de responsabilidad médico-hospitalaria a favor de los demandados con cubierta para los actos y/u omisiones descritas en la presente demanda.

6. Los-as [...] FULANOS Y FULANAS DE TAL 1-6 son médicos/as [...] que, en alguna eventualidad, podrían ser responsables solidariamente ante los demandantes por los daños sufridos por estos.

7. Las [...] SOCIEDADES DE GANANCIALES 7-12 [...] están compuestas por los/las médicos/as y sus esposos/as, y responden solidariamente a los demandantes por los actos de impericia médica llevados a cabo por el médico o médica cuyas labores resultaron en beneficio para la sociedad de gananciales pertinente." (énfasis en el original omitido) *Íd.*, págs. 13-14.

[3] Apéndice 3 de la *Petición de Certiorari Civil*, pág. 37-38. El 7 de diciembre de 2022, la parte recurrida presentó por separado su *Demanda Enmendada.* Apéndice 4 de la *Petición de Certiorari Civil*, pág. 39-63.

el 1 de diciembre de 2022 advino en conocimiento de que San Francisco Health System, Inc. manejaba y operaba el Metro Pavía Clinic Cupey; y de que el nombre correcto de Continenta Casualty Company era Continental Insurance Company. La parte recurrida solicitó autorización para enmendar la demanda con el fin de incluir como parte demandada en el pleito a San Francisco Health System, Inc., y corregir el nombre de la compañía aseguradora Continental Insurance Company.

El 27 de enero de 2023, San Francisco Health System, Inc. h/n/c Metro Pavía Clinic Cupey compareció al pleito mediante la presentación de una *Contestación a Demanda Enmendada*.[4] En síntesis, negó la mayoría de las alegaciones presentadas en la demanda y levantó varias defensas afirmativas. Además, y en lo pertinente a la controversia ante nuestra consideración, San Francisco Health System, Inc. alegó que "la Dra. Flores no era empleada de [Metro Pavía Clinic Cupey], sino que fue subcontratada por ER Sunrise, LLC";[5] y que "el personal médico de la sala de emergencias no era empleado de [Metro Pavía Clinic Cupey] sino que fue subcontratado por ER Sunrise, LLC."[6]

El 31 de enero de 2023, la parte recurrida presentó *Moción de Autorización para Presentar Segunda Demanda Enmendada a Tenor con la Regla 13.1 de Procedimiento Civil* acompañada por una *Segunda Demanda Enmendada*.[7] En su moción, la parte recurrida alegó que advino en conocimiento, mediante la *Contestación a Demanda Enmendada* presentada por San Francisco Health System, Inc., de que la entidad ER Sunrise "mediante contrato de servicios con SFHS y/o MPCC, subcontrata médicos y/u otro personal de salud, quienes brindan servicios de salud en la facilidad

---

[4] Véase, entrada Núm. 17 del expediente digital del Caso Núm. SJ2022CV09552 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[5] *Íd.*, inciso 15 de la pág. 4.
[6] *Íd.*, incisos 107, 111 y 114 de las págs. 47, 48 y 49.
[7] Apéndice 5 de la *Petición de Certiorari Civil*, págs. 64-65.

de sala de emergencia de MPCC"; y "es, potencialmente, responsable solidariamente con SFHS y/o MPCC por los graves daños y perjuicios causado a los demandantes como resultado de los actos de impericia médica y negligencia", por lo que solicitó autorización para enmendar la demanda con el fin de incluirla como parte demandada en el pleito.

El 1 de febrero de 2023, la parte recurrida presentó por separado la *Segunda Demanda Enmendada.*[8] En cuanto a ER Sunrise se alegó, entre otras cosas, lo siguiente:

> "5. La parte co-demandada ER SUNRISE, LLC [...] es una corporación [...] la cual, en todo momento pertinente y para la fecha en que ocurrieron los hechos, mediante contrato de servicios con SFHS y/o METRO PAVÍA CUPEY CLINIC, y a su vez, mediante subcontrato con médicos y otro personal de salud, proveía los médicos quienes brindaban servicios de salud en la facilidad MPCC, por lo que responde en daños y perjuicios, solidariamente con otros codemandados por los actos de impericia médica y negligencia en el cuidado médico-hospitalario de dichos médicos y otro personal."

> [...]

> 12. ER SUNRISE, LLC se une como parte co-demandada en este pleito de daños y perjuicios en esta fecha, debido a que mediante la información ofrecida en la contestación a la demanda, en su ¶ 15, que las demandantes advienen en conocimiento de que, mediante contrato de servicios con SAN FRANCISCO HEALTH SYSTEM, INC. (SFHS) y/o METRO PAVÍA CUPEY CLINIC, y a su vez, mediante subcontrato con médicos y otro personal de salud, la nueva codemandada subcontrata médicos y/u otro personal de salud, quienes brindan servicios de salud en la facilidad de sala de emergencia de MPCC. Específicamente, los codemandados alegaron que "la Dra. Flores no era empleada de MPCC, si no que fue subcontratada por ER SUNRISE, LLC". Por esta razón, surge que ER SUNRISE, LLC responde en daños y perjuicios, solidariamente con otros codemandados por los actos de impericia médica y negligencia en el cuidado médico-hospitala[r]io de los médicos y otro personal que proveyeron cuidado médico a Carmen y que estaban subcontratados por la corporación.

> [...]

> 15. Para la fecha de los hechos que dieron lugar a la presente demanda, ER Sunrise, LLC proveía como

---

[8] Apéndice 6 de la *Petición de Certiorari Civil,* págs. 66-92.

contratista de SFHS y/o MPCC, médicos y/u otro personal los cuales, a su vez, ofrecían servicios de salud en la sala de emergencia de MPCC, específicamente, entre otros, la Dra. Dra. Magda E. Torres Flores.

[…]

112. Además, en las fechas relevantes a esta demanda, SAN FRANCISCO HEALTH SYSTEM, INC., H/N/C METRO PAVÍA CUPEY CLINIC contrataba con ER SUNRISE para que proveyera mediante subcontrato, médicos que ofrecían servicios de salud en METRO PAVÍA CUPEY CLINIC, por lo que ER SUNRISE responde solidariamente en daños y perjuicios por los actos de impericia médica y negligencia en el cuidado médico-hospitalario."[9]

El 27 de julio de 2023, la parte recurrida presentó una *Tercera Demanda Enmendada* con el fin de incluir como parte demandada a Puerto Rico Medical Defense Insurance Company (en adelante, PRMD), compañía aseguradora de ER Sunrise; y de enmendar algunas de sus alegaciones.[10]

Luego de varios trámites procesales,[11] el 19 de septiembre de 2023, ER Sunrise y PRMD presentaron conjuntamente una *Moción de Desestimación*.[12] En síntesis, ER Sunrise, LLC, y PRMD solicitaron la desestimación de la demanda a su favor al amparo de la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5), alegando que las reclamaciones en su contra estaban prescritas por haber sido incluidos en el pleito transcurrido el término prescriptivo de un (1) año establecido en el Artículo 1868 del Código Civil, 31 LPRA ant. sec. 5298, para presentar una acción de daños y perjuicios bajo el Artículo 1802 del Código Civil, 31 LPRA ant. sec. 5141. Al respecto, alegaron que la parte recurrida "incluyó a ER Sunrise, LLC, 3 años después de haberse culminado la estadía del

---

[9] *Íd.*
[10] Apéndices 11 y 14 de la *Petición de Certiorari Civil*, págs. 155-156 y 186-213.
[11] Entre estos trámites, el 22 de agosto de 2023, San Francisco Health System, Inc. h/n/c Metro Pavía Clinic Cupey y Continental Insurance Company presentaron conjuntamente su *Contestación a Tercera Demanda Enmendada*. Véase, entrada Núm. 74 del expediente digital del Caso Núm. SJ2022CV09552 en el SUMAC; y el 24 de agosto de 2023, ER Sunrise y PRMD presentaron conjuntamente su *Contestación a Tercera Demanda Enmendada*. Apéndice 15 de la *Petición de Certiorari Civil*, págs. 214-245.
[12] Apéndice 16 de la *Petición de Certiorari Civil*, págs. 246-254.

demandante en el hospital y del conocimiento del daño" y "a PRMD, la parte demandante lo ha incluido después de 3 años y 7 meses de haberse conocido el daño."[13] Añadieron que el desconocimiento de la identidad de ER Sunrise y PRMD se debió a la falta de diligencia de la parte recurrida. Sobre este particular, entre otras cosas, alegaron lo siguiente:

> "De una búsqueda superficial, se podía conocer rápidamente la identidad y el nombre de los aquí codemandados, ya que es información pública. No es excusa, según señala el m[á]s alto foro, la falta de diligencia y el cruzarse de brazos so color de interrumpir contra todos según la doctrina esbozada en Fraguada, supra. Ya que es en este mismo caso que se establece el requisito de la debida diligencia que la parte demandante en el presente caso sin duda alguna no cumplió."[14]

El 25 de septiembre de 2023, la parte recurrida presentó su *Oposición a la Moción de Desestimación de Er Sunrise, LLC (Sumac-84).*[15] En síntesis, la parte recurrida alegó que no tenía medios para conocer que ER Sunrise manejaba la sala de emergencias del Metro Pavía Clinic Cupey, en lugar del propio San Francisco Health System, Inc. Argumentó que el desconocimiento que le impedía ejercer la acción contra ER Sunrise y PRMD no se debió a falta de diligencia, sino a que se trataba de información que no se le informaba al público en general. Finalmente, solicitó la imposición de honorarios de abogado imputándole a la parte peticionaria haber procedido con temeridad al solicitar la desestimación de las reclamaciones en cuestión bajo este fundamento.

Luego de varios trámites procesales, el 17 de octubre de 2023, notificada el 18 de octubre de 2023, el TPI emitió la *Resolución* recurrida, mediante la cual declaró No Ha Lugar la *Moción de*

---

[13] *Íd.*, pág. 247.
[14] *Íd.*, pág. 253.
[15] Apéndice 17 de la *Petición de Certiorari Civil*, págs. 255-264.

*Desestimación* presentada por la parte peticionaria.[16] En su dictamen, el TPI concluyó y resolvió lo siguiente:

"No hay duda que se enmendó la demanda para incluir a ER y PRMDIC luego de haber transcurrido un año de la ocurrencia de los hechos. Pero, en este caso los autos reflejan que la parte demandante fue diligente enmendando su reclamación para incluir las nuevas partes, tan pronto advino en conocimiento de la existencia de una entidad jurídica distinta al hospital que podría ser responsable y quién era su aseguradora.

Por ello, al aplicar la teoría cognoscitiva del daño concluimos que la causa de acción contra ER y PRMDIC fue radicada en tiempo y no se encuentra prescrita. No existe razón para presumir, en este caso, que los demandantes conocían o debían conocer la existencia de un subcontrato para administrar la sala de emergencias del hospital. Tampoco sobre quién era la aseguradora de dicha parte. No podemos perder de perspectiva que la forma en que SFHS decide hacer sus negocios, con quién subcontrata servicios, cuáles son los términos y/o a quién delega funciones que ordinariamente el público que asiste espera se realicen por el hospital directamente; no es información pública que se encuentra por el mero hecho de asistir a las facilidades o buscar en internet. En el curso ordinario de los casos, ese tipo de información se obtiene como parte del descubrimiento de prueba. También lo es el nombre de las aseguradoras."

El 30 de octubre de 2023, ER Sunrise y PRMD presentaron una *Moción de Reconsideración*, la cual fue declarada No Ha Lugar por el TPI mediante la *Orden* emitida esa misma fecha y notificada al día siguiente.[17]

Inconforme con la determinación del TPI, ER Sunrise y PRMD acudieron ante nos el 17 de noviembre de 2023 mediante el presente recurso de *Petición de Certiorari*, en el cual señalan el error siguiente:

**Erró el Tribunal de Primera Instancia al declarar No Ha Lugar la moción de desestimación por prescripción incoada por las partes codemandadas ER Sunrise LLC y Puerto Rico Defense Insurance Company.**

---

[16] Apéndice 1 de la *Petición de Certiorari Civil*, págs. 1-11. El 12 de octubre de 2023, la parte recurrida desistió de las reclamaciones contra los codemandados San Francisco Health System y Continental Insurance Company y se dictó una sentencia parcial decretando su archivo con perjuicio. Véase, entradas Núm. 87 y 88 del expediente digital del Caso Núm. SJ2022CV09552 en el SUMAC.
[17] Apéndices 18 y 19 de la *Petición de Certiorari Civil*, págs. 265-274 y 275-276.

El 13 de diciembre de 2023, la parte recurrida presentó su *Oposición a Certiorari.*

El 17 de enero de 2024, la parte peticionaria presentó una *Solicitud de Orden en Auxilio de Jurisdicción.*

El 18 de enero de 2024, la parte recurrida presentó su *Oposición a Moción en Auxilio de Jurisdicción.*

Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A.**

El recurso de *certiorari* es "un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior." *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337-338 (2012). Véase, además, *800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009); *García v. Padró,* 165 DPR 324, 334 (2005). En el ámbito judicial, el concepto discreción "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho." *IG Builders et al. v. BBVAPR,* supra, pág. 338. La discreción, "es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023); *800 Ponce de León v. AIG,* supra, a la pág. 174.

En el caso particular del Tribunal de Apelaciones, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita los asuntos interlocutorios que podemos revisar mediante un recurso de *certiorari,* bajo el entendimiento de que estos pueden esperar hasta la conclusión del caso para ser revisados en apelación. *IG Builders et al. v. BBVAPR,* supra, pág. 337. Al respecto, la Regla 52.1 de Procedimiento Civil, *supra,* dispone específicamente que el recurso de *certiorari* para revisar resoluciones u órdenes

interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 56 y 57, o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.* Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

A su vez, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que el Tribunal de Apelaciones deberá tomar en consideración al determinar si procede la expedición de un recurso de *certiorari* o de una orden de mostrar causa. Estos son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia." Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.*

**B.**

La prescripción extintiva constituye una institución propia del derecho civil en materia sustantiva, la cual está intrínsecamente atada al ejercicio del derecho que se pretende vindicar. *Campos v. Cía. Fom. Ind.*, 153 DPR 137, 143 (2001); *Olmo v. Young & Rubicam of P.R., Inc.*, 110 DPR 740, 742 (1981). Es una forma de extinción de un derecho, por la inercia de una parte en ejercer el mismo dentro del término prescrito por ley. *Maldonado Rivera v. Suárez y otros*, 195 DPR 182 (2016); *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365 (2012); *S.L.G. Serrano-Báez v. Foot Loker*, 182 DPR 824, 831 (2011). Esta figura tiene como objetivo impedir la incertidumbre de las relaciones jurídicas y sancionar la inacción del ejercicio de los derechos. *Orraca López v. ELA*, 192 DPR 31, 49 (2014); *COSSEC et al. v. González López et al.*, 179 DPR 793 (2010).

Cónsono con lo anterior, el Artículo 1868 del Código Civil, *supra,*[18] dispone que las acciones de daños y perjuicios por culpa o negligencia a las que se refiere el Artículo 1802 del Código Civil, *supra*, tienen un término de prescripción de un (1) año. *Col. Mayor Tecn. v. Rodríguez Fernández*, 194 DPR 635, 644 (2016); *Toro Rivera v. ELA*, 194 DPR 393, 415 (2015); *Fraguada Bonilla v. Hosp. Aux. Mutuo*, supra. El punto de partida de dicho término es la fecha en que el agraviado conoció o debió haber conocido que sufrió un daño, quién lo ocasionó, así como los elementos necesarios para poder ejercitar su causa de acción. *Toro Rivera v. ELA*, supra; *Fraguada Bonilla v. Hosp. Aux. Mutuo*, supra. En nuestro ordenamiento jurídico esta doctrina se conoce como la teoría cognoscitiva del daño.

---

[18] El "Código Civil de Puerto Rico" de 1930, fue derogado y sustituido por la Ley Núm. 55-2020, según emendada, conocida como "Código Civil de Puerto Rico" de 2020, 31 LPRA sec. 5311 *et seq.* Los hechos que originan la presente controversia tomaron lugar durante la vigencia del Código Civil de 1930, por lo cual esta es la ley que aplica al caso.

*COSSEC et al. v. González López et al.*, supra; *García Pérez v. Corp. Serv. Mujer*, 174 DPR 138 (2008); *Vera v. Dr. Bravo*, 161 DPR 308 (2004).

Una vez iniciado el término prescriptivo, corresponde a la parte agraviada expresar su voluntad de conservar su derecho a ser indemnizado. Nuestro ordenamiento reconoce tres maneras de manifestar la voluntad de conservar un derecho y que interrumpen efectivamente la prescripción extintiva, a saber: (1) el ejercicio de un derecho ante un foro judicial; (2) la reclamación extrajudicial de parte del titular de un derecho dirigida al deudor, y (3) el reconocimiento de una deuda por parte del deudor. Artículo 1873 del Código Civil, 31 LPRA sec. 5303. Una vez se interrumpe oportunamente la prescripción, el término prescriptivo comienza a transcurrir nuevamente. *SLG García-Villega v. ELA et al.*, 190 DPR 799, 816 (2014).

En materia de prescripción de la causa de acción bajo el Artículo 1802 del Código Civil, *supra*, en *Fraguada Bonilla v. Hosp. Aux. Mutuo*, supra, se adoptó la figura de la solidaridad impropia (o *in solidum*) cuando coincide más de un causante de un daño. Conforme a esta figura, si el perjudicado interesa conservar su causa de acción contra cada uno de los causantes del daño, deberá interrumpir la prescripción en relación con cada uno por separado y dentro del término prescriptivo de un (1) año establecido por el Artículo 1868 del Código Civil, *supra*. Véase, además, *Maldonado Rivera v. Suárez y otros*, supra.

Por otra parte, el Artículo 1803 del Código Civil, 31 LPRA ant. sec. 31 LPRA sec. 5142, recoge el principio de responsabilidad vicaria por virtud del cual, entre otros supuestos, un patrono podría ser responsabilizado extracontractualmente por los actos negligentes cometidos por alguno de sus empleados. En lo

pertinente, el Artículo 1803 del Código Civil, *supra,* dispone lo siguiente:

> "La obligación que impone [el Artículo 1802 del Código Civil, 31 LPRA ant. sec. 5141] es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.
>
> [...]
>
> Lo son igualmente los dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de los ramos en que los tuvieran empleados, o con ocasión de sus funciones.
>
> [...]
>
> La responsabilidad de que trata esta sección cesará cuando las personas en ella mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño."

El precitado artículo constituye una excepción especial al principio de la responsabilidad personal por los actos propios y solo puede aplicarse a los casos incluidos específicamente en el mismo. *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465 (2022). De igual forma, establece una presunción legal de responsabilidad de las personas citadas en él. En atención a las relaciones de autoridad o superioridad que mantienen con los autores del daño causado, la ley presume que le es imputable la causa de aquel por su propia culpa o negligencia. *Íd.*

La causa de acción establecida por Artículo 1803 del Código Civil, *supra,* consiste fundamentalmente en la culpa *in vigilando, in instruendo o in eligiendo* atribuible a las personas designadas estatutariamente como responsables. *Maderas Tratadas v. Sun Alliance et al.,* 185 DPR 880, 907 (2012). Se establece, pues, una presunción de culpa que puede consistir en una falta de vigilancia (culpa *in vigilando*), en una falta de instrucción (culpa *in instruendo*) o en una desacertada elección (culpa *in eligiendo*). *Íd.* Es decir, que, de haber sido el patrono diligente en vigilar, instruir o escoger a sus empleados, el daño no hubiese ocurrido. *Cruz Flores et al. v. Hosp.*

*Ryder et al.*, supra. Para activar esta presunción de culpa del patrono, un demandante debe establecer *prima facie*: (1) una relación de dependencia entre el patrono y el empleado, (2) que el empleado actuó en el desempeño de los ramos de su oficio con el propósito de servir y proteger los intereses del patrono, y que (3) el empleado tuvo culpa en el desempeño de esas funciones. *Pérez et al. v. Lares Medical et al.*, 207 DPR 965, 983 (2021). El patrono puede liberarse de esta responsabilidad si demuestra que empleó toda la diligencia de un buen padre de familia. *Cruz Flores et al. v. Hosp. Ryder et al.*, supra.

Se reconoce que, al amparo del Artículo 1803 del Código Civil, *supra*, los hospitales pueden ser responsables frente a un perjudicado por la falta de pericia atribuible al personal del hospital en el ámbito de sus funciones. *Cruz Flores et al. v. Hosp. Ryder et al.*, supra; *Márquez Vega v. Martínez Rosado*, 116 DPR 397, 404-405 (1985). Al momento de adjudicar responsabilidad vicaria a los hospitales por los actos de los médicos que laboran en su institución, es importante considerar la relación jurídica existente entre estos. *Íd.*; *Fonseca et al. v. Hosp. HIMA*, 184 DPR 281, 288 (2012). El hospital responde vicariamente por los actos de aquellos médicos que son sus empleados; por aquellos médicos, que, aunque no forman parte de su fuerza laboral, son parte de la facultad o *staff*, encontrándose disponibles para consultas de otros médicos; por los médicos pertenecientes a concesionarios de franquicias exclusivas para prestar servicios en el hospital; y por aquellos médicos que sin ser empleados gozan de privilegios en la institución. *Íd.*; *Márquez Vega v. Martínez Rosado*, supra; *Núñez v. Cintrón*, 115 DPR 598 (1984); *Sagardía de Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484, 515-16 (2009).

Cónsono con lo anterior, se ha resuelto que la solidaridad impropia, no se extiende al régimen de responsabilidad vicaria

establecido en el Artículo 1803 del Código Civil, *supra*. Al respecto, recientemente en *Pérez et al. v. Lares Medical et al.*, supra, pág. 989-890, se estableció que "la responsabilidad que surja entre el patrono y el empleado es una solidaria, más en su vertiente propia", por lo que "los actos interruptivos del término prescriptivo realizados contra el patrono o el empleado perjudican al otro por igual."

**III**

En su recurso de *Petición de Certiorari Civil,* las partes peticionarias ER Sunrise y PRMD señalan que erró el TPI "al declarar No Ha Lugar la moción de desestimación por prescripción incoada por las partes codemandadas ER Sunrise LLC y Puerto Rico Defense Insurance Company." Según reseñamos, en el dictamen recurrido, el TPI concluyó que la parte recurrida había sido diligente en la tramitación de su causa de acción incluyendo a los codemandados ER Sunrise y PRMD oportunamente en el pleito luego de haber advenido en conocimiento sobre su existencia. Finalmente, el TPI resolvió que las reclamaciones presentadas contra estos codemandados no estaban prescritas, por lo que denegó la solicitud de desestimación presentada.

Tratándose de la denegatoria de una moción de carácter dispositivo, estamos facultados, conforme a lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*, para revisar esta determinación mediante un recurso de *certiorari*. Sin embargo, la expedición de un recurso de *certiorari* sigue siendo una decisión discrecional, la cual debemos ejercer tomando en consideración los criterios establecidos la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

Evaluado el recurso ante nuestra consideración a la luz de estos criterios, concluimos que no existen motivos que justifiquen que ejerzamos nuestra función revisora en esta etapa de los procedimientos. No surgen indicios de que haya mediado prejuicio, parcialidad o error craso y manifiesto por el Tribunal de Primera

Instancia. La disposición de la decisión recurrida tampoco es contraria a derecho.

**IV**

Por los fundamentos expuestos, se deniega la expedición del auto de C*ertiorari* y se declara No Ha Lugar la *Solicitud de Orden en Auxilio de Jurisdicción.*

Notifíquese.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones